### John C. Henning v. Minnie Libke.

1. STATUTES—*Sec. 6, Chap. 101, R. S., Construed.*—Under Sec. 6,
Chap. 101, R. S., providing that when any oath authorized or required
by law to be made, is made out of the state, it may be administered by
any officer authorized by the laws of the state in which it is so admin-
istered, and if such officer have a seal, his certificate, under his official
seal, shall be received as *prima facie* evidence, without further proof of
his authority to administer oaths, it is necessary to the sufficiency of a
notary's certificate, that it shall be stated in the certificate that the
notary has, by the law of the foreign state, authority to administer
oaths.

**Motion to Open Judgment by Confession.**—Appeal from the Supe-
rior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge presiding.
Heard in this court at the March term, 1902. Affirmed. Opinion filed
November 28, 1902.

**Statement.**—This is an appeal from an order of the
Superior Court, overruling a motion of appellant to set
aside a judgment of said court, entered against him by con-

fession, and to allow him to plead to the merits. The note on which judgment was entered was made by F. E. and Emma Buenger and appellant. It was dated July 24, 1900, and was for the sum of $300, payable two years after date, to the order of Albert Libke, with interest at the rate of six per cent per annum, and was indorsed by Albert Libke to appellee. Attached to it was a warrant of attorney, in the usual form, to confess judgment at any time after the date of the note.

Appellant, in support of his motion, presented his own affidavit and the affidavits of Charles W. Lamborn, Fred E. Buenger and Emma Buenger. Appellee, in opposition to the motion, presented her own affidavit and that of Albert Libke.

Attached to the affidavit of Fred E. Buenger is a certificate as follows:

" STATE OF INDIANA, } ss.
   County of Starke. }

Personally appeared before me, Oscar B. Smith, a notary public in and for said county and state, Fred E. Buenger, to me well known, who after carefully reading the foregoing affidavit, and being duly sworn, subscribed the same as the truth in substance and in fact. And I further certify that Fred E. Buenger is respectable and credible.

My commission as a notary public expires December 13, 1903.

Witness my hand and seal this 17th day of September, 1901.

{ STARKE COUNTY, IND. }        OSCAR B. SMITH,
{   Notary Public. }           Notary Public."

A certificate the same as the foregoing was attached to the affidavit of Emma Buenger, with the exception that her name was inserted in the certificate in the places where Fred E. Buenger's name appears in the foregoing certificate. Also attached to Emma Buenger's affidavit, and next after the notary's certificate, is the following certificate:

" STATE OF INDIANA, } ss.
   County of Starke. }

I, Henry E. White, clerk of the Starke Circuit Court, hereby certify that Oscar B. Smith is a duly commissioned,

qualified and acting notary public for said county and state, whose certificate of acknowledgment attached to the foregoing instrument of writing and whose signature thereto is genuine, as I believe; and whose acts as such are entitled to full faith and credit.

His commission is dated December 13, 1899, and expires December 13, 1903.

In witness whereof, I have hereunto affixed the seal of said court, at Knox, Indiana, and subscribed my name this 24th day of September, 1901.

{ STARKE CIRCUIT COURT, }    HENRY E. WHITE,
{    INDIANA.    }    Clerk Starke Circuit Court."
{     SEAL.     }

The court, on objection made by appellee, excluded the affidavits of the Buengers and overruled the motion to set aside the judgment.

CHARLES W. LAMBORN, attorney for appellant.

CLARK & CLARK, attorneys for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

It is contended by appellant's counsel that the affidavits of Fred E. and Emma Buenger were erroneously excluded.

Section 6 of chapter 101 of the Revised Statutes is as follows:

" When any oath, authorized or required by law to be made, is made out of the state, it may be administered by any officer authorized by the laws of the state in which it is so administered, and, if such officer have a seal, his certificate, under his official seal, shall be received as *prima facie* evidence, without further proof of his authority to administer oaths."

The Supreme Court has held that, under this section, it is necessary to the sufficiency of a notary's certificate that it shall be stated in the certificate that the notary has, by the law of the foreign state, authority to administer oaths. Smith v. Lyons, 80 Ill. 600; Ferris v. Commercial Nat. Bank, 158 Ill. 237; Trevor v. Colgate, 181 Ib. 129.

Appellant's counsel contends, citing Figge v. Rowlen, 84 Ill. App. 242, that it may be shown by evidence other than the certificate of the notary, that he was authorized to

administer oaths; but, although the insufficiency of the cer-
tificate, in failing to state that the notary was so author-
ized, was specifically pointed out by the objection, appellant
offered no further proof of his authority.    The certificate
of the clerk of the Indiana Circuit Court, attached to Emma
Buenger's affidavit, does not state that the notary was
authorized to administer oaths, and, even if it had so stated,
it would not, as we think, have availed appellant, because
such certificate is not authorized by the statute of this state.
The affidavits of Fred E. and Emma Buenger were properly
excluded.

In Henning's affidavit he states, in substance, that he
went with F. E. Buenger to Albert Libke's house, as a mere
friendly act, to inquire whether Albert would lend $300 to
Buenger; that Buenger there stated that he owned two lots
and houses worth $7,000, and was amply able to repay the
money; that Libke said he would make the loan; that he
had the money in bank and would draw it, and be prepared
on a certain evening to make the loan, and he requested
affiant and Buenger then to call; that they 'called, as
requested, and Libke had the note prepared and the
money ready; that he then gave the $300 to Buenger, and
handed the note to Buenger and wife to sign; that up to
that time nothing had been said about affiant signing the
note, nor did he understand that he was to sign it; that the
loan was not made in consideration of his signing the note,
or becoming surety; that Libke afterward said: " John, you
had better sign the note," and that affiant signed it without
knowing its character or contents; that affiant can not read
the English language, which Libke knew; that the note
was not read to him, and that he received no consideration
therefor; that Minnie Libke was present on both occasions
when Buenger and affiant called on Albert Libke, and heard
all the conversations which occurred, and that she was not
an indorsee for valuable consideration before the maturity
of the note; that affiant speaks and understands the Eng-
lish language very imperfectly, and is not familiar with
business methods; that he first knew of the judgment

Henning v. Libke.

August 6, 1901, when a copy of the execution was served on him; when he at once went to his attorney's office, where he was informed that said attorney was sick, and would not be in his office till August 16th; that affiant filed a claim of exemption; that he was in very poor health, and was confined to his bed, and under a physician's care, from August 23d till September 9th, and September 10th he went to his attorney's office to have his affidavit prepared.

The affidavit of Charles W. Lamborn is, substantially, that he is an attorney at law, and that he was absent from Chicago from July 24th till August 19, 1901; that Amelia Henning, wife of John Henning, brought to him a chancery summons September 5th; that he acquainted himself with the entry of the judgment in question, and informed Henning of its nature September 10th; that Henning speaks and understands English with difficulty, and seems unacquainted with business and legal matters.

Albert Libke's affidavit is, in substance, that he is Minnie Libke's husband; that he made the loan for which the note was given, as his wife's agent, and that the money loaned was hers; that Henning brought Buenger to affiant's house, and said that he, Buenger, desired to borrow $300; that Henning, in the presence of affiant and his wife, said Buenger owned two houses and lots, was well fixed, and was good for the money, when affiant replied that might be true, but as he did not know Buenger, his wife would loan the money if he, Henning, would sign the note with him; that Henning said he would do so; that Buenger was good and honest, and that he would not object to signing his note for $1,000, and that affiant then requested Buenger to call on a certain evening, later, and get the money; that Buenger and wife and Henning came later, the Buengers together and Henning a few minutes after them; that affiant produced the note ready for signatures, and Buenger and wife signed it and handed it back to affiant, when affiant turned to Henning and told him that he must sign, as he had promised, when Henning said, " All

right," and signed the note; that Henning well understands the liability attached to the signature of a note; that a short time before the occasion in question one Snyder called on affiant for a loan, which affiant refused to make without security; that Snyder then went to Henning, and the latter refused to sign a note with him, saying he, Snyder, had too many debts, and when Buenger got the money in question Henning said, "This ain't Mr. Snyder; Snyder got too much debts, but Buenger is all right;" that July 1st Henning conveyed to Herman Keipert, his brother-in-law, lot 30, etc. (describing it), and August 3d judgment herein was entered. August 6th Henning filed a debtor's schedule, and August 26th a creditor's bill was filed; that both affiant and his wife had known Henning a long time, but neither of them knew Buenger or his wife, and relied solely on Henning to repay the loan.

The affidavit of Minnie Libke, who, Henning in his affidavit says, heard all the conversations which occurred and knows all the facts and circumstances, corroborates that of Albert Libke.

It is apparent from the affidavits, including Henning's, that Henning was active in trying to procure the loan for Fred E. Buenger. He went with the Buengers to Libke's house for that purpose. That neither of the Libkes knew either of the Buengers, but both knew Henning, is not denied by the latter. If Albert Libke, on the first occasion of Henning visiting him with Buenger, promised to let the latter have the money, nothing having been said about Henning signing as surety, why did Henning go with Buenger to Libke the second time? He says that he went with Buenger the first time merely as a friendly act; but this does not account for his second visit, because, according to his statement, what he went for the first time, namely, to procure Libke's consent to make the loan, was accomplished at that time. His statement that he signed the note not knowing anything of its character or contents, seems to us incredible. He knew that a loan was being made to Buenger of $300, and he knew that on account of that loan the Buen-

gers were signing a paper.   He admits, in his affidavit, that Libke told him that the paper was a note, saying " John, you had better sign the note," yet we are asked to believe that he did not know that he incurred any liability by signing it.   The trial court did not so believe, nor do we.   On the contrary, we are of opinion that he knew exactly what he was doing, and that he signed the note as surety at the same time the Buengers signed it, and as he had promised when he first called at Libke's house with Buenger.

The judgment will be affirmed.